(No. 34686.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NICK GREELEY, Plaintiff in Error.

*Opinion filed September 18, 1958.*

PEDDERSON, MENZIMER & CONDE, of Rockford, (DALE F. CONDE, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN B. ANDERSON, State's Attorney, of Rockford, (FRED G. LEACH, WILLIAM H. SOUTH, and BRUCE N. JACOBSON, of counsel,) for the People.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

By an information filed in the circuit court of Winnebago County, the defendant, Nick Greeley, was charged with having committed statutory rape against a fifteen-year old girl. At the jury trial which followed on May 15, 1957, he was adjudged guilty of this crime and his punishment fixed at ten years imprisonment. Defendant's motions for a new trial, in arrest of judgment, and for probation were

subsequently denied and judgment entered upon the verdict. Writ of error has been prosecuted to this court.

At the time of the alleged offense, December 10, 1956, defendant, a 61-year old barber, maintained his place of business at his home in Loves Park, Illinois. According to the prosecutrix, she went to the barbershop on that date, accompanied by her younger sister, for the express purpose of submitting to sexual relations for which she would be paid. She testified that upon entering the shop she sat down and waited until a customer had left and then went with defendant to the rear of the house where the illicit act occurred. She also described other similar acts with defendant which took place prior to December, 1956, and said that upon all occasions she received from $2 to $5. Her account of the December affair was partially corroborated by the younger sister, who told of visiting the barbershop with the prosecutrix and of the latter's retirement with the defendant to a back room for a five-to-ten-minute period. A girl friend of the complaining witness also told of seeing defendant with the prosecutrix on several occasions during the summer of 1956.

Ralph Allton, a Winnebago County deputy sheriff, testified that at the time of arrest in January, 1957, defendant admitted having intercourse with the prosecutrix and signed a written confession of guilt which was later introduced into evidence. Despite defendant's objection, Allton recalled that Greeley told him he had first started to "fool around" with the younger sister but was stopped by the prosecutrix. In addition, this witness said that defendant also admitted having sexual relations with two of the prosecutrix's girl friends and with "other girls who at the moment he could not recall." Defendant's objection to this latter testimony was sustained but his motion for a mistrial was denied. Guy Veach, another deputy sheriff, identified the confession and, upon redirect examination and over defendant's objections, testified that defendant had been interrogated "with

reference to other matters" and that the admissions involved "other people" in addition to the complainant.

The defendant did not take the stand in his own behalf but eight witnesses testified as to his good reputation in the community for chastity and morality. On cross-examination seven of these eight witnesses were asked, over defendant's objection, whether they could state under oath that Greeley did not have sexual intercourse with complainant on or about December 10, 1956, and all replied they could not. Typical of the questions propounded by the prosecutor on these occasions was the following: "Mr. Nelson, could you state under oath that Nick Greeley did not have sexual intercourse with a fifteen-year old girl by the name of [naming the complaining witness] on or about December 10th of last year?" Five of the witnesses were also asked, over objections, whether their opinion would have changed had they known the charges to be true. To this question, two replied it would make no difference, two said they could not answer, and one witness stated that his opinion would be changed by such a revelation. In rebuttal, two People's witnesses, both of whom were young girls who had been mentioned in Allton's testimony as having engaged in sexual relations with defendant, testified that defendant's reputation for morality was bad in the community.

The defendant first contends that he was materially prejudiced by testimony concerning alleged affairs with other girls. The rule is that a person may be convicted only with reference to the crime with which he is charged and proof of other unrelated offenses or acts of misconduct is both incompetent and prejudicial. (*People* v. *Donaldson,* 8 Ill.2d 510; *People* v. *Gibson,* 255 Ill. 302; *People* v. *Egan,* 331 Ill. 489; *Janzen* v. *People,* 159 Ill. 440.) An exception exists in those cases involving sexual relations where prior offenses between a defendant and the complainant may be shown to establish the familiarity between

these parties. (*People* v. *Kraus,* 395 Ill. 233; *People* v. *Roberts,* 367 Ill. 620; *People* v. *Cassidy,* 283 Ill. 398.) Thus, although it was permissible in the present case to consider the prior relationship between defendant and the complainant, any affairs which he may have had with other individuals, or inferences thereof, were entirely beyond the scope of proper examination and should not have been brought to the jurors' attention. Therefore, it is our opinion that error did result from reference to these unrelated matters.

The defendant also contends that the lower court erred in permitting the prosecution to cross-examine his character witnesses as to their knowledge of his guilt and the effect such knowledge would have upon their opinion of his character. It is generally said that character may be proved only by evidence of defendant's general reputation in the community for characteristics relevant to the crime with which he is charged and that the personal opinion of an individual witness is neither competent evidence of character nor reputation. (*People* v. *Willy,* 301 Ill. 307.) Since a person's reputation is determined largely by what the group as a whole thinks of him, we have consistently held it improper to permit a character witness to be cross-examined as to his own knowledge of particular acts of misconduct, (*People* v. *Hermens,* 5 Ill.2d 277; *People* v. *Celmars,* 332 Ill. 113;) rather, such interrogation must be confined to disparaging rumors and conversations which the witness has heard in the community and which negative the character sought to be established. (*People* v. *Willy,* 301 Ill. 307; *People* v. *Anderson,* 337 Ill. 310; *Reuben* v. *United States,* 86 F.2d 464; 2 Wigmore on Evidence, 2d ed., sec. 988; *Pippen* v. *State,* (Texas, 1934,) 70 S.W.2d 598.) Thus, not only was it immaterial what the individual witness may have thought of defendant's guilt or of the effect such guilt would have upon his general reputation, but also these questions encompassed the ultimate issue which was

solely within the scope of jury determination. There certainly was no doubt but what these witnesses were without knowledge as to the facts of the alleged crime; therefore the only effect such interrogation had was to place the defendant at a disadvantage by insinuating matters which the prosecution was legally obligated to prove. This being the case, the lower court erred in permitting such cross-examination.

The People have called our attention to the general proposition that a record need not be entirely free of error and argue that even though mistakes may have been made in the present case, they were not of such a nature as to warrant a reversal of the judgment. With this we cannot agree. A jury is quick to recognize evidence of defendant's other acts of indiscretion, and even though a portion of such testimony may be stricken, as a practical matter it cannot be said that by so doing it is entirely removed from jury deliberation. The gravity of mistake must be considered in relation to the facts of each individual case to determine whether reversible error has occurred. In the present case it is our opinion that the error was of such a nature as to warrant a new trial, especially in view of the fact that the jury determined both guilt and punishment. (*People* v. *Donaldson*, 8 Ill.2d 510.) Although other alleged errors have been assigned by defendant, they are such as are not likely to occur in a subsequent proceeding and need not be considered at this time.

For the reasons stated, the judgment of the circuit court of Winnebago County is reversed and the cause remanded to that court for a new trial.

*Reversed and remanded.*